UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL LIPFORD,

    Plaintiff,

v.

CITY OF CHICAGO, et al.,

    Defendants.

Case No. 15-cv-6988

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Lipford sued the City of Chicago and numerous police officers under 42 U.S.C. § 1983. He alleges that the officers violated his Fourth Amendment rights when they searched his home and arrested him in September 2013. *See generally* [45]. Plaintiff also asserts a state-law malicious-prosecution claim against the officers and a state-law indemnity claim against the City. *Id.* Defendants moved for summary judgment. [86]. For the reasons explained below, this Court partially grants and partially denies Defendants' motion.

### I. Background

The following facts come from Defendants' Local Rule 56.1 statement of facts [87] and Plaintiff's Local Rule 56.1 statement of additional facts [93].

In September 2013, Plaintiff lived with Deandre Norfleet, a probationer. [87] ¶¶ 12–13. On September 18, 2013, Officers Dailey, Goff, and Veleta (the Defendant Officers) accompanied Cook County probation officers (no longer parties to this case) to Plaintiff and Norfleet's apartment to conduct a probation check on Norfleet. *Id.* ¶

1

11. Defendants say that the probation officers had a search warrant related to Norfleet that they showed Plaintiff, who then allowed all the officers to enter his home. *Id.* ¶¶ 15–16.[1]

Plaintiff denies that he let the officers into his apartment voluntarily. He says that he let the officers in because they showed him a piece of paper that they claimed was a search warrant for Norfleet. [94] ¶ 31. But, Plaintiff says, Defendants never produced a warrant during discovery, no Defendant mentioned a warrant during their depositions, and Plaintiff's official arrest report says—without mentioning a warrant—that officers were "let into the location by Michael Lipford." *Id.*; [93-2] at 3. In other words, Plaintiff says that the officers lied to him about having a warrant to gain entry to his apartment. [94] ¶ 31.

The parties agree that, once inside, Dailey walked through the apartment toward the open door to Plaintiff's bedroom. [87] ¶ 20. When Dailey looked through the door, he saw a shotgun sitting on a shelf above the bed. *Id.* ¶ 21. Dailey then entered Plaintiff's bedroom and saw another shotgun in the corner of the room. *Id.* ¶ 22. At this point, Goff, Veleta, the probation officers, and Plaintiff came into the room. *Id.* ¶ 23. Plaintiff admitted that he owned both guns, and Veleta asked him for his Firearm Owners Identification (FOID) card. *Id.* ¶ 25.

Plaintiff searched his bedroom and a safe for his FOID card. *Id.* ¶ 26. When Plaintiff opened the safe, the Defendant Officers saw boxes of ammunition. *Id.* ¶ 29. Despite his search, Plaintiff could not produce a FOID card, so the Defendant Officers arrested him for failure to possess a FOID card. *Id.* ¶ 31. After arresting

---

[1] It appears that Norfleet was not there, although neither side explicitly says so.

2

Plaintiff, the Defendant Officers transported him to the police station, where he was charged with failure to possess a FOID card while in possession of firearms and ammunition. *Id.* ¶ 40. At his subsequent criminal trial, Plaintiff stipulated that his last FOID card expired in 2009. *Id.* ¶ 46. Plaintiff was ultimately found not guilty of all charges. *Id.* ¶ 49.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. Analysis

#### A. Unreasonable Search

Plaintiff claims that Defendants violated his Fourth Amendment rights by lying about having a search warrant to enter his apartment. [92] at 7. Viewing the evidence in the light most favorable to Plaintiff, *Rasho*, 856 F.3d at 477, triable issues of fact exist regarding whether the Defendant Officers lawfully entered Plaintiff's home.

The Fourth Amendment prohibits "unreasonable searches and seizures." Warrantless searches presumptively violate the Fourth Amendment. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001). That said, an occupant's voluntary consent to a search of his home generally makes a warrantless search reasonable. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006). An occupant does not consent to a search, however, when he allows officers to enter his home based upon their claim of a search warrant. *Bumper v. North Carolina*, 391 U.S. 543, 549–50 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search.").

Oddly, although Defendants' fact statement says (twice) that probation officers showed Plaintiff a search warrant when they arrived with Dailey, Goff, and Veleta, [87] ¶¶ 15–16, Defendants now argue that they rely only upon Plaintiff's consent for their authority to enter his apartment, *see* [99] at 5 ("Defendants' motion explicitly disclaimed reliance on a warrant."). Clearly, if the officers lied about having a search warrant—as Plaintiff's evidence suggests—then Plaintiff did not

4

truly consent to them entering his home. *See Hadley v. Williams*, 368 F.3d 747, 749 (7th Cir. 2004) (explaining that when police lie about having a warrant or have an invalid warrant, "consent is vitiated"). Plaintiff repeatedly testified at his criminal trial and during his deposition that he allowed the officers in because they showed him a "piece of paper" and told him it was a search warrant for Norfleet. [93] ¶ 31. Based upon Plaintiff's testimony and Defendants' current position regarding the existence of a search warrant (which they had asserted existed in their fact statement, but failed to mention in the Defendant Officers' depositions and the arrest report), as well as Defendants' failure to produce any warrant during discovery, the record contains genuine issues of material fact regarding whether Plaintiff consented to the search. Specifically, it remains unclear whether the officers had a warrant and whether Plaintiff voluntarily consented to the search.

Defendants hint, but do not fully argue, that Norfleet's status as a probationer reduced Plaintiff's expectation of privacy such that he has limited grounds to challenge the search. [88] at 11; [99] at 5. Undeveloped arguments are considered waived. *See Crespo v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2016).

Even if Defendants made this argument properly, it fails to help them here. True, probationers have a reduced expectation of privacy. *See Samson v. California*, 547 U.S. 843, 850 (2006). But the law has not yet explicitly reduced the expectation of privacy for people who live with probationers, absent, at the very least, some showing of knowledge regarding that status. *Compare Thornton v. Lund*, 538 F. Supp. 2d 1053, 1058 (E.D. Wis. 2008) (concluding that "the reasoning underlying

5

the Supreme Court's view that parolees and probationers have a diminished privacy interest appears not to apply to individuals with whom they live"), *and Barajas v. City of Rohnert Park*, 159 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016) (explaining that when a probationer's co-resident "has no knowledge of the [probation] search condition applicable to their home," the co-resident has the right to refuse a search), *with Taylor v. Brontoli*, No. 1:04-cv-0487, 2007 WL 1359713, at *1 n.4 (N.D.N.Y. May 8, 2007) (finding that a co-resident's refusal of a search did not control when the co-resident "knew that Malloy was on probation and that her trailer was subject to searches" under a probation agreement). Neither side provided evidence of the conditions of Norfleet's probation—such as whether probation officers could search his home at any time without reasonable suspicion—and neither side offered evidence about Plaintiff's knowledge of Norfleet's specific probation conditions.

Defendants also fail to raise qualified immunity as a defense to this claim. *See* [99] at 11 (arguing qualified immunity only on the issue of probable cause to arrest Plaintiff). Even if they had raised qualified immunity, the disputed material facts (whether officers lied about having a search warrant and whether Plaintiff actually consented to officers entering his home) would prevent this Court from finding that Defendants merit qualified immunity. *See Hill v. Coppleson*, 627 F.3d 601, 606 (7th Cir. 2010). Thus, this Court denies Defendants' motion for summary judgment as to Plaintiff's claim of an unreasonable search.

**B.     False Arrest**

Plaintiff claims that the Defendant Officers falsely arrested him because they

6

lacked probable cause to ask for his FOID card in the first place, and still lacked probable cause after asking because he "gave every indication of believing that he had a FOID card." [92] at 9–10. Defendants argue that they did not need probable cause to ask for the FOID card and that Plaintiff's failure to produce the card gave them probable cause to arrest him. [99] at 7–9. This Court agrees.

Probable cause provides an absolute defense to a false arrest claim. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause for an arrest exists when the facts and circumstances at the time of the arrest—viewed from the perspective of a reasonable person in the officer's shoes—warrant a prudent person believing that the suspect committed, is committing, or will commit a crime. *Id.* If reasonable minds could differ over the facts or resulting inferences, the probable cause determination belongs to the jury. *Id.*

Under Illinois' FOID Card Act, residents who possess firearms or ammunition must also have a FOID card in their possession. 430 ILCS 65/2(a); *see also People v. Mourecek*, 566 N.E.2d 841, 845 (Ill. App. Ct. 1991) ("A person commits the offense of failing to possess a State FOID card when he possesses a firearm or firearm ammunition without having a FOID card in his *immediate* possession.") (emphasis added). Contrary to Plaintiff's interpretation, [92] at 5, the FOID Card Act has no knowledge or intent requirements. *See People v. Schweihs*, 43 N.E.3d 979, 982 (Ill. 2015) (contrasting the FOID Card Act with the offense of aggravated unlawful use of a weapon, which requires that someone "knowingly" carried a firearm outside the home "without having been issued a valid FOID card").

7

No case supports Plaintiff's position that officers needed probable cause to believe that he violated the FOID Card Act before they could ask for his FOID card. Logically, such a requirement would make it nearly impossible to develop probable cause for a violation of the FOID Card Act, unless gun owners regularly announce that they lack FOID cards. And the cases that Plaintiff cites for his dubious argument do not apply here because they address whether officers had the reasonable suspicion necessary for a *Terry* stop of a moving vehicle, not whether officers already conversing with someone may ask to see a FOID card. *See, e.g.*, *People v. Granados*, 773 N.E.2d 1272, 1276 (Ill. App. Ct. 2002).

Here, the Defendant Officers unquestionably possessed probable cause to believe that Plaintiff violated the FOID Card Act when he admitted to possessing the firearms and ammunition in his bedroom, but could not produce a FOID card upon request. *See Mourecek*, 566 N.E.2d at 845. Although the Defendant Officers might have illegally entered and searched Plaintiff's home (an issue for a jury to decide), the exclusionary rule does not apply to civil suits under § 1983. *See Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (collecting cases). Thus, this Court grants summary judgment to Defendants on Plaintiff's false-arrest claim.

### C. Malicious Prosecution

Plaintiff claims that the Defendant Officers maliciously prosecuted him because they initially acted without probable cause and never "explained what actually happened to the prosecutors." [92] at 12. To succeed on a malicious-prosecution claim under Illinois law, Plaintiff must show, among other things, that:

8

(1) Defendants commenced or continued a criminal or civil proceeding against him; and (2) Defendants lacked probable cause for that proceeding. *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)).

This claim fails for the same reason that Plaintiff's false-arrest claim failed: the Defendant Officers had probable cause to arrest Plaintiff for violating the FOID Card Act when he failed to produce a FOID card while in possession of firearms and ammunition. *See Mourecek*, 566 N.E.2d at 845. Even if the Defendant Officers searched Plaintiff's home illegally, the exclusionary rule does not apply to malicious-prosecution suits under Illinois law. *See Vaughn*, 662 F. App'x at 467. Thus, this Court grants summary judgment to Defendants on Plaintiff's malicious-prosecution claim.

### D. Indemnity

The City cannot face liability when its officers have no liability for the underlying claims. *See Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) (citing 745 ILCS 10/2-109). Thus, this Court grants summary judgment to the City on all claims except Plaintiff's claim of an unreasonable search.

### E. Motion to Dismiss Certain Officer Defendants

Within their motion for summary judgment, Defendants moved to dismiss certain officers whom Plaintiff originally sued, but that the parties now agree never participated in any of the relevant events. [88] at 14. Plaintiff moved to voluntarily dismiss all the officers in question with prejudice in October 2017, [89], and this

9

Court granted that motion, [90]. Thus, this Court denies as moot Defendants' motion to dismiss these officers.

**IV.     Conclusion**

This Court partially grants and partially denies Defendants' motion for summary judgment [86].  This Court grants the motion as to Plaintiff's false-arrest and malicious-prosecution claims and the corresponding indemnity claims against the City.  This Court denies the motion as to Plaintiff's unreasonable-search claim and the corresponding indemnity claim against the City.  This Court denies as moot Defendants' request to dismiss certain officers that Plaintiff already voluntarily dismissed with prejudice.  The motion hearing set for March 6, 2018, at 9:45 a.m. in Courtroom 1203 stands, but is converted to a status hearing.  The parties shall come prepared to set a trial date.

Dated: March 5, 2018

Entered:

_____
John Robert Blakey
United States District Judge